DONNA G. MRSKOS,           )
         Plaintiff,        )
                        )
      v.                )      CAUSE NO.: 2:12-CV-255-PRC
                        )
CAROLYN W. COLVIN,         )
Acting Commissioner of the     )
Social Security Administration,   )
        Defendant.      )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Donna G. Mrskos on July 5, 2012, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed on December 10, 2012. Plaintiff requests that the December 17, 2010 decision of the Administrative Law Judge denying her claims for disability insurance benefits be reversed or remanded for further proceedings. On March 19, 2013, the Commissioner filed a response, and Plaintiff filed a reply on April 1, 2013. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 14, 2008, Plaintiff filed an application for disability insurance benefits, alleging an onset date of November 16, 2007. The application was denied initially on February 27, 2009, and upon reconsideration on May 1, 2009. Plaintiff timely requested a hearing, which was held on November 1, 2010, before Administrative Law Judge ("ALJ") Sherry Thompson. In appearance were Plaintiff, her attorney Thomas J. Scully III, and vocational expert Thomas F. Dunleavy. The ALJ issued a written decision denying benefits on December 17, 2010, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since November 16, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: atrial fibrillation and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; can frequently balance, stoop, kneel, crouch and crawl; and must avoid moderate exposure to extreme heat.

6. The claimant is capable of performing past relevant work as a clerical worker/secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 16, 2007, through the date of this decision (20 CFR 404.1520(f)).

(AR 11-16).

On May 15, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On July 5, 2012, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A. Medical Background**

Plaintiff was fifty-nine years old on the date of the ALJ's decision. She has a history of atrial fibrillation as early as July 2000 and was treated with ultrasound ablation in 2000. She did well but then began experiencing persistent atrial fibrillation in October 2006.

Prior to the onset date, an April 11, 2005 spirometry test revealed mildly reduced functional residual capacity, "probably obesity related." (AR 342).

On May 3, 2007, an echocardiogram showed a nondilated left ventricle with mild to moderate hypokinesis affecting the anterior wall and septum more so than the remainder of the ventricle; the ejection fraction was around 40%; there was moderate left atrial enlargement; and no significant valvular abnormalities were noted.

On May 9, 2007, Plaintiff underwent cardioversion. An electrocardiogram showed rapid atrial fibrillation with some nonspecific ST changes. The impression was recurrent persistent atrial fibrillation, post pulmonary vein isolation as well as "moderate systolic dysfunction–new. Possibly new to rate related systolic dysfunction." (AR 553). The cardioversion was not successful as her atrial fibrillations immediately returned.

On July 20, 2007, Plaintiff underwent another cardioversion. Sinus rhythm was restored.

However, Plaintiff continued to have persistent atrial fibrillation. On November 15, 2007, Plaintiff underwent another ablation procedure. After this surgery, Plaintiff had a hematoma adjacent to the right femoral vein that had been accessed. Medication and observation were prescribed.

In a treatment note dated November 25, 2007, it was noted that Plaintiff had a history of tachycardia induced cardiomyopathy.

On December 10, 2007, the follow-up visit note indicates a "history of obesity." (AR 237). Plaintiff denied chest pain, dizziness, and/or dyspnea. She reported occasional fast skipped beats for several beats that would then subside. The doctor diagnosed paroxysmal atrial fibrillation status post ultrasound ablation in 2000, morbid obesity, and persistent atrial fibrillation.

On December 20, 2007, the treatment notes report that Plaintiff remained in sinus since the November ablation. The doctor also noted that since the May 3, 2007 echocardiogram showed an ejection fraction of 40%, her LV function had returned to normal. She was also diagnosed with hypertension with diastolic dysfunction.

At a February 11, 2008 check up, Plaintiff denied chest pain, dyspnea, palpitations, and/or dizziness. The diagnoses were again paroxysmal atrial fibrillation status post ultrasound ablation in 2000, morbid obesity, and persistent atrial fibrillation.

A June 9, 2008 progress note report indicates that Plaintiff denied palpitations, chest pain, dyspnea, or dizziness. Plaintiff's exercise tolerance was 6 minutes once a month on the treadmill. Her "active lifestyle" included walking around her yard. (AR 231). Plaintiff was given the same diagnoses of paroxysmal atrial fibrillation status post ultrasound ablation in 2000, morbid obesity, and persistent atrial fibrillation.

In a June 29, 2008 progress note report, Dr. Wilber wrote that he had seen and examined Plaintiff, that Plaintiff remained in sinus with no medications, and that Plaintiff "feels well and has returned to an active lifestyle." (AR 231). Dr. Wilber again noted that Plaintiff's LV function had

returned to normal and that she had hypertension with diastolic dysfunction. Dr. Wilber commented that she had an "[e]xcellent outcome from ablation." *Id.*

A September 2, 2008 echocardiogram showed that Plaintiff was in atrial flutter at a rate of 166. Her medication was then increased. On September 5, 2008, Plaintiff underwent cardioversion, which returned her to sinus rhythm.

On January 27, 2009, J. Sands, M.D. reviewed the medical records and completed a Physical Residual Functional Capacity Assessment for the Disability Determination Bureau. Dr. Sands listed Plaintiff's primary diagnosis as atrial fibrillation and her secondary diagnosis as obesity. Dr. Sands opined that Plaintiff could perform a range of medium work with some postural and environmental limitations. In the explanation section for the postural limitations, Dr. Sands wrote: "57 yr old female w/ hx of atrial fibrillation. underwent cardioversion on 5/9/2007, 7/20/2007, and 9/5/2008. 12/17/08 notes show no recurrence of atrial fibrillation. 9/5/08 echo states normal aortic valve with normal doppler and nondialated left ventricle. bmi 38.3." (AR 749). In assessing the severity of Plaintiff's symptoms, Dr. Sands wrote:

> Careful consideration has been given to the clmt's statements regarding alleged symptoms and their effect on functioning. The clmt's [medically determinable impairments ] could reasonably be expected to produce the alleged symptoms, and the allegations are not inconsistent with the objective findings on record. The credibility of these statements is further supported by the general consistency of the clmt's description of her symptoms within progress notes and other medical evidence. I find the clmt's statements about her symptoms and their functional effects to be fully credible.

(AR 753). In April 2009, J.V. Corcoran, M.D. reviewed the file and affirmed Dr. Sands' decision "as written." (AR 758).

A May 20, 2009 treatment note indicates "rare symptomatic AF," "usually at night," "not very frequent," "no med. issues," "lungs clear," "no edema." (AR 759).

On June 8, 2009, Plaintiff was seen for a one-year follow up. Plaintiff denied chest pain, dyspnea, lightheadedness, or dizziness. She reported that she would occasionally feel her heart race for 30 seconds in the morning when she wakes up but did not feel it race during the day. She also denied paroxysmal nocturnal dyspnea and orthopnea. Plaintiff reported that she did not use stairs. She was able to "do the things she wants to do but is limited after 5 hours of work and feels fatigued." (AR 761). Plaintiff reported that she did not exercise on a regular basis. The same diagnoses were given of paroxysmal atrial fibrillation status post ultrasound ablation in 2000, morbid obesity, and persistent atrial fibrillation.

On February 23, 2010, Gary Bringham, M.D. noted in the treatment record: "rare AF?," "brief 5-10 mins," "well tolerated," "otherwise doing well." (AR 770). Plaintiff did not have shortness of breath, her lungs were clear, and she had no edema.

The conclusions from a June 7, 2010 echocardiogram were left atrial enlargement and normal global left ventricular ejection fraction.

As for Plaintiff's other physical complaints, at a July 11, 2008 exam by her family physician, Plaintiff complained of bilateral hand pain and right foot pain. She reported that her fingers were "stiff," that she had a history of carpal tunnel of the right wrist, that she worked with her hands all day, and that she occasionally has "trigger" finger. (AR 277).

### B. Plaintiff's Testimony

Ms. Mrskos testified that she continued to experience atrial fibrillations during the day and sometimes would wake at night with an episode. Her episodes of atrial fibrillation occurred randomly and had no set pattern. She also experienced dizziness associated with her heart condition and felt unstable on her feet. Daily, she experienced weakness and feeling faint. The medications

she took made her "very, very tired." (AR 29). She spent "a lot of time dozing." (AR 30). She could only walk five or six minutes before feeling "winded," stand thirty to forty minutes at a time, and sit for twenty minutes. *Id.* She performed limited household activities, including making simple meals, ironing a shirt, and putting in a load of laundry. She would fall asleep to nap in "a matter of seconds" after loading the washing machine. *Id.*

Ms. Mrskos testified that she struggled to continue part time work with her heart condition. Ms. Mrskos worked four days a week for about four hours a day as a cashier at a hardware store. She was given a stool to sit on if she did not feel well, including if she felt weak, faint, or the onset of her heart palpitations. Her employer also allowed her to go the break room and recover from an episode of fibrillation. She estimated that it took about ten minutes to recover from an episode and that she went to the break room about two to three times a day.

She also had left hand carpal tunnel symptoms, including tingling and numbness. Her hand pain and stiffness increased with use, and she wore a brace when working. Plaintiff is right handed. She previously had right carpal tunnel syndrome and underwent carpal tunnel release. She also had residual leg difficulties following complications from her last cardiac surgery, including a limp.

In the Work History Report submitted to the Social Security Administration on December 5, 2008, Ms. Mrskos stated that her episodes of atrial fibrillation could occur at any time. In the Disability Report, also dated December 5, 2008, Plaintiff wrote that, when an episode occurred, she experienced shortness of breath, dizziness, and fainting due to her cardiac condition. In addition, her heart condition limited her physical activities. Ms. Mrskos noted that it was very stressful when she experienced atrial fibrillations and she could not concentrate or move around during an episode. Her household activities included preparing simple meals, feeding her dogs, watering plants, cleaning

the bathroom, sweeping, and dusting. She had difficulty with lifting, squatting, walking, kneeling, stair climbing, and concentration. Bending to lift an item sometimes caused dizziness, kneeling sometimes made her feel lightheaded, and climbing stairs caused shortness of breath. She could walk for five minutes before needing to rest. Grocery shopping for large amounts of food was difficult, she could shop for small items like bread and milk. In an updated report, dated April 10, 2009, Plaintiff stated that she got tired increasingly easily. She also experienced more problems with shortness of breath, including shortness of breath with walking any distance, and leg pain.

### C. Vocational Expert Testimony

The ALJ asked the vocational expert to assume a hypothetical individual with Plaintiff's vocational background who could perform a range of medium work including the ability to occasionally climb ramps and stairs; could never climb ladders, ropes, and scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; and would need to avoid moderate exposure to extreme heat. The vocational expert testified that such an individual could perform Plaintiff's past secretarial/clerical work. If the individual needed to take frequent unscheduled breaks resulting in off-task behavior for more than fifteen to twenty percent of the workday due to atrial fibrillation, the vocational expert testified that no competitive employment would be available.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence

consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [the claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand of the ALJ's decision, arguing that (1) the ALJ erred in the credibility determination; (2) the ALJ's residual functional capacity ("RFC") determination contravenes SSR 96-8p; (3) the ALJ failed to properly consider Plaintiff's obesity in the RFC determination; and (4) the Appeals Council erred as a matter of law. The overarching error that mandates remand in this case is the ALJ's failure to acknowledge and discuss Plaintiff's testimony regarding her fatigue after five hours of work and her need to take unscheduled breaks at work for ten minutes two to three times a day to recover from an episode of atrial fibrillation, as well as the reliance on Dr. Sands' apparently internally inconsistent credibility determination. These errors taint

the credibility determination, the RFC analysis, and the ALJ's consideration of Plaintiff's obesity. The Court considers each argument in turn.

## A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the claimant's symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. In determining whether statements of symptoms contribute to a finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)    The individual's daily activities;
(2)    Location, duration, frequency, and intensity of pain or other symptoms;
(3)    Precipitating and aggravating factors;
(4)    Type, dosage, effectiveness, and side effects of any medication;
(5)    Treatment, other than medication, for relief of pain or other symptoms;
(6)    Other measures taken to relieve pain or other symptoms;
(7)    Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p requires the ALJ to consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the

claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* § 404.1529(c)(1).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

As an initial matter, Plaintiff notes that the ALJ impermissibly employed the well-known "boilerplate" language at the outset of the credibility determination. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, an ALJ's use of the boilerplate language does not amount to reversible error if she "otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68. In this case, the use of "boilerplate" language alone does not require remand because the ALJ analyzed evidence to explain her credibility determination. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Nevertheless, several other errors in the ALJ's credibility determination require remand.

First, the ALJ gave great weight to and adopted reviewing physician Dr. Sands' opinion, including his finding that Plaintiff was fully credible; however, Plaintiff's statements regarding her symptoms in the records reviewed by Dr. Sands appear inconsistent with the finding that she can perform medium level work. In completing the physical RFC assessment, Dr. Sands found Plaintiff's statements about her symptoms and their functional effects to be "fully credible." (AR 753). Dr. Sands explained that Plaintiff's statements of symptoms were generally consistent with the evidence of record, including the objective medical evidence, as well as with her symptoms reported in progress reports.

At the time of Dr. Sands' opinion on January 27, 2009, Plaintiff's statements included those on her October 2008 Disability Report form that atrial fibrillation limited the amount of physical activity she could do, caused her heart to race and beat erratically, caused shortness of breath, and made her feel dizzy. She also stated that the atrial fibrillation can occur at any time. She noted the two pulmonary vein ablations and the three cardioversions needed to return her heart to sinus rhythm.

Her statements also included those on the December 2008 Function Report form, including her minimal daily activities, which included feeding her dog, preparation of simple meals, simple grocery shopping for bread or milk (noting that shopping for large amounts of food is difficult), dusting, laundry on the main level of the home, sweeping, and cleaning the bathroom. She wrote that these activities take her an "average amt of time. Daily if not in A. Fib." (AR 171). She wrote that yard work causes shortness of breath and dizziness and that she shops once weekly for 20 minutes. She explained that when she is in atrial fibrillation, which was unpredictable, she could not concentrate on anything other than the "rapid erratic heart beat," and that she could not move around

14

a lot during atrial fibrillation. She wrote that bending to lift an item caused dizziness, kneeling made her feel lightheaded, and climbing stairs caused shortness of breath. She wrote that she could only walk five minutes before needing to stop and rest for one to two minutes. She also reported that episodes of atrial fibrillation caused her greatly increased stress.

Despite all of these statements, which Dr. Sands credited fully, Dr. Sands found that Plaintiff could perform a range of medium exertional work. Without any analysis of Plaintiff's statements in light of Dr. Sands' credibility finding, the ALJ adopted Dr. Sands' RFC of medium level work. This was in error. In addition, the ALJ's credibility determination is internally inconsistent because, on the one hand, she gives great weight to Dr. Sands' opinion, which includes the finding that Plaintiff was fully credible, but then, on the other hand, she herself finds Plaintiff to be not fully credible without any discussion of Dr. Sands' favorable credibility finding. This inconsistency requires remand.

Second, the ALJ failed to list and discuss Plaintiff's favorable statements of symptoms and limitations made after Dr. Sands' RFC opinion. On March 31, 2009, Plaintiff reported on the Disability Report-Appeal form that she had been experiencing shortness of breath since February 2009 and that she tired more easily. The ALJ did not discuss this statement. As for her June 8 and June 21, 2009 treatment records, the ALJ cherry picks statements, noting that the doctor stated that Plaintiff's heart remained in normal rhythm without any medications, that Plaintiff "also told her doctor that she feels well and returned to her active lifestyle," (AR 14 (citing AR 761)), that Plaintiff reported that she did not experience chest pain, dyspnea, lightheadedness, or dizziness, and that she only occasionally feels her heart race for 30 seconds in the morning when she wakes up but does not feel it during the day. However, the ALJ did not acknowledge the notation in the same report that

Plaintiff is "[a]ble to do the things she wants to do but is limited after 5 hours of work and feels fatigued." (AR 761).

Similarly, the ALJ characterizes the February 23, 2010 treatment record as the doctor observing that Plaintiff "has infrequent atrial fibrillation that is brief in duration," summarizing the doctor's statements as providing that Plaintiff "tolerates these episodes well and that in general, the claimant is doing well" and observing that Plaintiff's lungs were clear, that she had no edema, and that she reported no shortness of breath. (AR 14-15). What the ALJ omits is that the doctor did not note only "brief," but rather "brief 5-10 min." This is consistent with Plaintiff's November 1, 2010 hearing testimony, which the ALJ also ignores, that Plaintiff is required to take unscheduled breaks from her cashier job at the hardware store when she experiences atrial fibrillation, that the episodes last approximately 10 minutes, and that they occur two to three times a day on almost a daily basis. It is also not clear that a cardiologist's perspective on what constitutes "well tolerated" for an episode of atrial fibrillation would be the same as an employer's view of such an episode. At the hearing, the vocational expert testified that Plaintiff's unscheduled breaks alone would preclude competitive employment. The ALJ did not discuss why any of these statements of symptoms were not fully credible or why these symptoms were inconsistent with Plaintiff's ongoing condition of atrial fibrillation.

Third, the ALJ seems to discredit Plaintiff on the basis that the same doctor who evaluated Plaintiff on February 23, 2010, had previously evaluated her on May 20, 2009, at which time Plaintiff reported that she had rare symptomatic atrial fibrillation, usually at night, and not very frequently. However, the history of Plaintiff's atrial fibrillation demonstrates cycles of treatment, periods of sinus rhythm with infrequent episodes, and then the recurrence of episodes of atrial

fibrillation. The ALJ does not discuss whether Plaintiff's increasing symptoms were part of this cycle or why her symptom of experiencing atrial fibrillation is not credible. *See Carradine v. Barnhart*, 360 F3d 751, 755-56 (7th Cir. 2004) ("[The claimant] does not claim to be in wracking pain every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week.").

Fourth, the only assessment of non-medical evidence conducted by the ALJ in the credibility determination is the reference to Plaintiff's activities of reading, watching television, using a computer, going shopping, watering her plants, caring for her dogs, dusting, doing laundry, and cleaning. The ALJ fails to explain how these basic activities of daily living are inconsistent with her symptoms and claim of disability. The Seventh Circuit Court of Appeals has criticized ALJs for relying on the ability to perform simple or basic daily activities in order to find a claimant not fully credible:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, Bjornson's husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson*, 671 F.3d at 647 (citing *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351-52 (7th Cir. 2010); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005); *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005); *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996)).

The minimal daily activities Plaintiff performs do not appear inconsistent with the need to take unscheduled breaks to recover from an episode of atrial fibrillation or with being exhausted after working for only 5 hours. Notably, the ALJ does not discuss *why* these basic activities support a finding that Plaintiff can perform the medium work in the RFC or her past work, which was performed at the light level. *See Gentle*, 430 F.3d at 867-68 (finding caring for two small children, cooking, cleaning, and shopping not to be inconsistent with a disability claim); *Zurawski*, 245 F.3d at 887 (finding that the claimant's activities of helping his children prepare for school, doing laundry, and cooking dinner were "not of a sort that necessarily undermines or contradicts a claim of disabling pain"); *Clifford*, 227 F.3d at 872 (finding that performing household chores in a two-hour interval, cooking, shopping, vacuuming, and watching grandchildren were not inconsistent with disability, in part, because of the additional limitations in doing those basic activities).

In this case, the ALJ did not consider the extent to which Plaintiff's basic daily activities were in fact limited. Plaintiff testified that she performed these tasks at her own pace in short intervals, resting or napping as needed. When she went shopping, she only took short trips of twenty minutes or less for small items. When she cooked, she prepared simple meals. One consideration an ALJ must make is that "daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms." SSR 96-7p at *8. The ALJ did not consider this factor.

The ALJ's only reasoning was that, "[a]lthough the claimant said that she has a hard time concentrating while experiencing atrial fibrillation, she reads, watches television and uses her computer frequently." (AR 15). But Plaintiff did not testify that she does those things *while* she is experiencing atrial fibrillation or that she is able to concentrate on those activities if she is

experiencing atrial fibrillation. The ALJ does not explain how Plaintiff's testimony is inconsistent on this point; thus, it cannot be a basis for finding her less than credible. *See Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994) ("Because we have concluded that the inconsistencies in Herron's testimony do not exist, and the ALJ has not provided us with any other reason for rejecting Herron's testimony, we are left without a basis to uphold the ALJ's credibility determination.").

Overall, the ALJ identified some of Plaintiff's alleged limitations and considered in detail much of the medical evidence. However, the ALJ relied primarily on Dr. Sands' opinion, which itself appears inconsistent in its credibility determination and RFC, and the ALJ failed to consider Plaintiff's symptoms after January 2009 that support her claim of disability. As in *Carradine*, the Court does not find that Plaintiff is entitled to benefits. 360 F.3d at 756. Perhaps the ALJ will find Plaintiff's statements not fully credible and make a similar decision on remand but with a proper analysis. However, without an analysis by the ALJ of these issues and in light of the VE testimony, the Court cannot say what the result would be on remand, and, thus, cannot say that the credibility determination was not patently wrong.

On remand, in addition to the issues above, the ALJ shall also include in the assessment of Plaintiff's credibility a discussion of Plaintiff's testimony that her medication makes her feel "very, very tired" (AR 29), *see* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p, and the positive fact of her long and continuous work history, *see* SSR 96-7p at *5.

### B. Residual Functional Capacity

Plaintiff argues that the ALJ erred in the RFC assessment both by failing to follow Social Security Ruling 96-8p and by failing to assess her obesity. The Court considers each in turn.

*1.      Social Security Ruling 96-8p*

The RFC, which is at issue at steps four and five of the sequential evaluation, is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The evidence relevant to the RFC determination includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. SSR 96-8p, at *5. The ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." *Id*.

Plaintiff argues that the ALJ failed to comply with SSR 96-8p's requirement that the ALJ "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, at *7. Plaintiff contends that the ALJ did not conduct this assessment for Plaintiff's symptoms of fatigue, need for breaks, exertional limitations, dizziness, fainting, and hand difficulties. This argument overlaps with the ALJ's failure to discuss favorable evidence of limitations in the credibility determination discussed in the prior section. Plaintiff testified that she felt "very, very tired," in part, due to her medications, that she would "doze" or nap during the day after doing

household chores, that she could fall asleep for a nap in seconds, and that she was fatigued after five hours of part time work. Plaintiff also testified that she needed to take unscheduled 10-minute breaks at her part time work to recover from episodes of atrial fibrillation approximately two to three times a day. She testified and reported that she felt weak, dizzy, unstable on her feet, and faint due to her cardiac problems. She also testified that she could only walk about five or six minutes before feeling "winded," stand thirty to forty minutes at a time, and sit for twenty minutes.

The ALJ's failure to discuss these complaints is an error that requires remand. *See Myles v. Astrue*, 582 F.3d 672, 676-77 (7th Cir. 2009) (finding that the failure to properly assess fatigue and hand limitations required remand). If the ALJ had properly found Plaintiff not credible as to these limitations, then she may not have violated SSR 96-8p by failing to discuss them; but, in light of the errors in the ALJ's credibility determination on these specific issues, remand is required. The VE testified that the need to take breaks to the extent testified to by Plaintiff would preclude competitive employment. *See Jamison v. Astrue*, Cause No. 2:08cv232, 2010 WL 405954, at *6 (N.D. Ind. Jan. 25, 2010) (remanding due to ALJ's failure to discuss record evidence supporting a need for unscheduled breaks).

In the response brief, the Commissioner recounts the ALJ's discussion of the medical evidence that suggests Plaintiff is doing well and had infrequent episodes of atrial fibrillation. But, as discussed in the previous section on credibility, the ALJ did not discuss the favorable evidence in the same reports supporting her alleged limitations, and the ALJ's attempt to discredit some of Plaintiff's statements, such as the testimony regarding difficulty concentrating, falls flat. Contrary to the Commissioner's argument, the ALJ did not build a "logical bridge" because she failed to discuss limitations that would have precluded work. Again, Plaintiff's testimony about needing

unscheduled 10-minute breaks is consistent with her February 2010 report to her doctor that she experienced atrial fibrillation that lasted 5-10 minutes. Finally, despite artful drafting on the part of the Commissioner to suggest otherwise, at no point in her decision did the ALJ discuss Plaintiff's need to take unscheduled breaks.[1]

The Commissioner also argues that Plaintiff's subjective allegations of symptoms alone cannot support a finding of disability and that the ALJ is not required to provide a written discussion of evidence that is not supported by clinical findings. But, the ALJ found that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 14). The ALJ did not find that Plaintiff's impairments imposed no limitations on work ability; rather, the ALJ found that they significantly limit work ability. Moreover, although the ALJ discussed the medical evidence, she did not explain how the test results relate to Plaintiff's ability to perform work.

Based on the foregoing, the Court cannot affirm the decision as supported by substantial evidence. On remand, if the ALJ finds Plaintiff credible as to these alleged limitations, the ALJ must discuss how they factor into the RFC.

In addition, the ALJ did not discuss Plaintiff's left hand carpal tunnel symptoms, described in the background section above. The ALJ found that Plaintiff could perform her past secretarial work. On remand, the ALJ shall assess and discuss the alleged manipulative and dexterity limitations. *See Myles*, 582 F.3d at 676-77 (finding that the ALJ failed to properly assess hand limitations after acknowledging the limitations but giving no reason for rejecting the limitations);

---

[1] The Commissioner writes: "The ALJ's analysis of the evidence concerning Plaintiff's infrequent and brief episodes of atrial fibrillation also contradicted her reports that she needed to take frequent breaks at work due to that condition." (Def. Resp. 10). The ALJ did not make this point in her decision.

*Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) (finding that the ALJ erred in not properly evaluating a hand limitation).

2. *Obesity and the RFC*

Plaintiff argues that the ALJ failed to properly consider the effects of her obesity in formulating the RFC. Plaintiff acknowledges that the ALJ found Plaintiff's obesity to be a severe impairment at step two and that the ALJ noted in the RFC analysis that Plaintiff had a BMI of 41.1, which is considered obese. However, Plaintiff contends that the failure to conduct an analysis of her obesity contravenes Social Security Ruling 02-1p and Seventh Circuit Court of Appeals' precedent.

Under Social Security Ruling 02-1p, Plaintiff's BMI of 41.1 is Level III obesity, the highest level, described as extreme obesity. *See* SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). The Ruling clarifies that "[t]hese levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." *Id*. The consideration of obesity should be an integral factor underlying the construction of the RFC. *Id*. at *6. The ALJ must consider whether obesity causes any functional limitations and explain that conclusion: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id*. at *6-7.

The Ruling provides some guidance on how obesity is factored into the RFC determination:

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

*Id.* at *6.[2] Consistent with Ruling 02-1p, the Seventh Circuit Court of Appeals requires that the ALJ "factor in obesity when determining the aggregate impact of an applicant's impairments." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (citing *Martinez*, 630 F.3d at 698-99; *Clifford*, 227 F.3d at 873); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (finding that the ALJ erred by not explaining the consideration given to the claimant's obesity).

Nevertheless, failure by the ALJ to explicitly discuss a claimant's obesity is harmless error if the ALJ adopted limitations suggested by physicians who were aware of or discussed the claimant's obesity. *Arnett*, 676 F.3d at 593 (citing *Prochaska*, 454 F.3d at 736-37; *Skarbek*, 390 F.3d at 504). Plaintiff fails to discuss this law in her briefs. Unlike in *Arnett*, the limitations adopted by the ALJ were based on Dr. Sands' opinion, and Dr. Sands explicitly considered Plaintiff's obesity in combination with her severe cardiac condition. Dr. Sands listed obesity on the front of the physical residual functional capacity assessment form as the secondary diagnosis after the primary diagnosis of atrial fibrillation. Dr. Sands noted Plaintiff's BMI at that time of 38.3. And, Dr. Sands reviewed the entire record, which included repeated references to and diagnoses of obesity in the context of Plaintiff's treatment for atrial fibrillation. This included all of the treatment records following the 2007 ablation, which list, in bold letters, "MORBID OBESITY" under "Diagnoses" on each of the treatment dates. *See* (AR 231, 234, 237, 240, 243).

---

[2] Plaintiff also cites the Ruling's discussion of how obesity is considered at step three in the context of whether a listing is met or equaled. However, Plaintiff does not argue that the ALJ erred at step three, but rather that the ALJ's error regarding obesity occurred when she determined Plaintiff's RFC.

In her opening brief, Plaintiff discusses harmless error in relation to her obesity argument, but she does so only in the context of post hoc rationalization without recognizing the application of harmless error to an ALJ's consideration of obesity in *Arnett* or *Prochaska*. (Pl. Br. 10) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). Neither the Court nor the Commissioner in this case is attempting to rationalize the ALJ's decision or is substituting hypothetical explanations for some inadequate explanation by the ALJ as cautioned against in *McKinzey. See* 641 F.3d at 892. Thus, on its face, the ALJ's failure to separately analyze Plaintiff's obesity in the RFC determination is harmless error because the ALJ adopted limitations assessed by a doctor who explicitly considered Plaintiff's obesity. *See Arnett*, 676 F.3d at 593. However, as noted above, Dr. Sands' RFC opinion appears internally inconsistent because he found Plaintiff fully credible, yet Plaintiff's statements of symptoms appear inconsistent with the RFC for medium work given by Dr. Sands. It is not clear to what extent this inconsistency also affects Dr. Sands' consideration of Plaintiff's obesity. On remand, the ALJ will have an opportunity to remedy the violation of Rule 02-1p by explicitly discussing Plaintiff's obesity in the RFC determination.

### C. Appeals Council

In a related vein, Plaintiff argues that the Appeals Council erred as a matter of law by declining to accept review after finding that the ALJ did not evaluate obesity pursuant to SSR 02-1p. The regulations provide that the Appeals Council will grant review if there is an "error of law" in the ALJ's decision. 20 C.F.R. § 404.970(a)(2). In support of this argument, Plaintiff cites *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012). First, *Farrell* dealt with the distinct issue of whether the Appeals Council erred in refusing to consider new evidence not submitted to the ALJ. *Id.* at 770-72. Second, after finding that the Appeals Council had erred by ignoring the new medical evidence to

reject the claimant's appeal, the Seventh Circuit Court of Appeals in *Farrell* went on to find that the Appeals Council's error was not harmless. *Id.* at 772. In the instant case, remand is required regardless of whether the Appeals Council's evaluation of the ALJ's failure to follow SSR 02-1p is harmless because of the other significant deficiencies in the ALJ's decision.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], and **REMANDS** the Commissioner of Social Security's final decision for further proceedings consistent with this Opinion and Order.

So ORDERED this 31st day of March, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record